## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CARL HARRISON,

    Plaintiff,

    v.

DPSCS SECRETARY,
WARDEN,
LT. G. HARRISON,
COMMISSIONER WAYNE HILL,
CPL LUNA,
ROBIN WOOLFORD and
P. CASPER,

    Defendants.

Civil Action No. TDC-20-2274

## MEMORANDUM OPINION

Plaintiff Carl Harrison, an inmate at the Maryland Correctional Institution Jessup ("MCIJ") in Jessup, Maryland, filed this civil action against multiple federal law enforcement officials and state correctional officials alleging that his personal property was improperly confiscated from his cell and not returned. Although Harrison filed this case pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680 (2018), he has since voluntarily dismissed the claims against all defendants who worked for the federal government. Liberally construed, the Complaint arguably also asserts against the remaining defendants claims for violations of Harrison's federal rights under 42 U.S.C. § 1983 ("§ 1983") and state law tort claims under the Maryland Tort Claims Act ("MTCA"), Md. Code. Ann., State Gov't §§ 12-101 to 12-110 (West 2021). Five of the defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

Having reviewed the Complaint and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Harrison alleges that on June 26, 2017, a group of correctional officers, including Defendant Lt. G. Harrison ("Lt. Harrison"), entered his cell at MCIJ and seized all of his personal property, including legal and religious materials. He was not given a receipt or other documentation of the seized property. Harrison was later told that his property had been transferred to the Federal Bureau of Investigation ("FBI") and United States Drug Enforcement Administration ("DEA") but that it was eventually lost.

On June 28, 2017, Harrison submitted an Administrative Remedy Procedure complaint ("ARP"), ARP No. MCIJ-0547-17, regarding the seizure of his property. In this ARP, Harrison stated that he was told that the FBI and DEA took the property and that he needed his legal documents back because of an upcoming court date. In the written response, the MCIJ ARP Coordinator dismissed the ARP on procedural grounds because more information was needed and asked Harrison, "What is your remedy?" ARP at 1, Mot. Summ. J. Ex. 4, ECF No. 24-4.

Harrison was then told by Lt. Harrison that his property had been seized for a federal investigation and that it would be returned upon completion of that investigation. Based on that representation, on July 25, 2017, Harrison signed a form withdrawing ARP No. MCIJ-0547-17.

On February 18, 2018, Harrison was transferred to Roxbury Correctional Institution ("RCI") and continued his efforts to secure the return of his property. Over the course of several months, Harrison's attorneys exchanged emails with officials at both the Maryland Department of Public Safety and Correctional Services ("DPSCS") and the DEA in attempts to gain return of the property, particularly the legal documents. Beginning on July 24, 2018, the attorneys were

informed that although DEA took possession of some of the property after the search, it did not include legal materials and that such documents may have been lost or thrown away.

On October 23, 2018, Harrison pleaded guilty and was sentenced in a state criminal case deriving from the investigation that resulted in the seizure of Harrison's property. During the hearing, Harrison asked the judge about his missing property, and the judge told him that he had been informed that the property was lost and advised Harrison that he should file a grievance with the Inmate Grievance Office ("IGO").

On October 27, 2018, Harrison filed a second ARP requesting the return of his property. In this ARP, No. RCI-0693-18, Harrison stated that based on his conversation with Lt. Harrison, he had expected to get his property back following conclusion of the investigation and that he just recently learned at the court hearing that the property had been lost. On November 5, 2018, the ARP was procedurally dismissed because additional information was needed, and Harrison was asked to provide the number of his original ARP on this issue and proof that the DEA had his property. Harrison resubmitted the ARP including the requested information on November 15, 2018. The resubmitted ARP was dismissed on November 20, 2018 on the grounds that the DEA took all of the property, so the complaint fell outside of the DPSCS's jurisdiction. Harrison appealed this determination to both the Commissioner of Correction and the IGO, then filed a Petition for Judicial Review with the Circuit Court for Washington County, Maryland. The Circuit Court affirmed the decision of the IGO on September 9, 2019. Maryland Judiciary Case Search, No. C-21-CV-19-000133 (Washington Cnty. Cir. Ct.), *available at* https://casesearch.state.md.us (last visited Aug. 23, 2022).

On August 6, 2020, Harrison filed the Complaint in this case and named as Defendants the Secretary of the DPSCS; the Warden of MCIJ; Lt. Harrison; Commissioner of Correction Wayne

3

Hill; Corporal Luna; Detective McLhinney, a DEA Task Force Officer; IGO Deputy Director Robin Woolford; RCI ARP Coordinator R. Casper; and three DEA officials. On December 22, 2020, the DEA returned certain property to Harrison, including five compact discs with legal material, several photographs, two phone books, a folder with letters, 18 empty, addressed envelopes, and approximately 20 copies of photographs. On November 19, 2021, Harrison requested the dismissal of all claims against the DEA officials. The Court then dismissed the claims against the DEA officials and Det. McLhinney.

## DISCUSSION

In the Motion, filed on behalf of the Secretary of the DPSCS, the Warden of MCIJ, Commissioner Hill, IGO Deputy Director Woolford, and Lt. Harrison (collectively, "Defendants"), Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that (1) the FTCA claim fails because none of the remaining defendants is a federal officer; (2) any § 1983 claims are barred by the statute of limitations; (3) Harrison failed to exhaust administrative remedies; (4) any claims against Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution; (5) the claims against the Secretary of DPSCS, the Warden of MCIJ, Commissioner Hill and IGO Deputy Director Woolford (collectively, "the Supervisor Defendants") should be dismissed because the allegations and facts do not support personal or supervisory liability against them; (6) summary judgment should be granted because the property was returned; and (7) Defendants are entitled to qualified immunity.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

4

plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and submitted numerous exhibits in support of their Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). In opposing the Motion, Harrison has submitted exhibits of his own, but he has also filed a Motion for Discovery in which he seeks the production of chain of custody logs relating to his property, emails between the DPSCS Intelligence Officer and his attorneys, and correspondence with the DEA officials relating to his property. He also requests an *in camera* review of original versions of the documents already produced by Defendants to ensure their authenticity. Because the Court has determined that the resolution of the Motion is not dependent on the factual details surrounding the loss of the property, the Court finds that discovery of these materials is not necessary for a fair adjudication of the Motion. The Court therefore may treat the Motion as one seeking summary judgment for those claims requiring consideration of the exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient

6

evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    FTCA

Under the FTCA, the United States is liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [Federal] Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As it is undisputed that none of the remaining defendants is a federal employee, the FTCA claim must be dismissed.

## III.    Section 1983

Construed liberally, Harrison alleges that the loss of his property violated his federal constitutional rights pursuant to § 1983. Although he does not explicitly identify the specific rights at issue, the Court construes the Complaint to allege a deprivation of property without due process of law under the Fourteenth Amendment and a violation of the right to access the courts under the First Amendment.

### A.    Statute of Limitations

Defendants argue that any § 1983 claims must be dismissed because they are time-barred under the relevant statute of limitations. As § 1983 does not include a limitations period, the Court applies the period applicable to the most analogous state law cause of action. *Owens v. Balt. City State's Attorney's Office* 767 F.3d 379, 388 (4th Cir. 2014). For a § 1983 claim arising in Maryland, the applicable statute of limitations is the general civil statute applicable to personal injury suits. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury

limitations period, which in Maryland is three years."); Md. Code Ann., Cts. & Jud. Proc. § 5-101

(West 2020) ("A civil action at law shall be filed within three years from the date it accrues . . .").

Although the Maryland statute of limitations applies, when a cause of action has accrued

is a federal question. *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) *(en banc)*.

"An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been

infringed." *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Manuel v. Joliet*, 137 S.

Ct. 911, 920 (2017)). A claim accrues "when the plaintiff possesses sufficient facts about the harm

done . . . that reasonable inquiry will reveal [the] cause of action." *Nassim*, 64 F.3d at 955 (citing

*United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)). Accrual does not occur until "the plaintiff

knows or, in the exercise of due diligence, should have known both the existence and the cause of

his injury." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) *(en*

*banc)*. In the Complaint, Harrison alleges that his personal property was seized from his cell on

June 26, 2017 and placed in the custody of the FBI and DEA. Defendants contend that the statute

of limitations began to run on that date, and because he did not file his Complaint until August 6,

2020, the Complaint was filed outside the three-year statute of limitations. Harrison, however,

does not challenge the lawfulness of the search or even the seizure of his property as part of an

investigation. Rather, his claim is that the property was not returned following the investigation

and was apparently lost. Thus, Harrison's claim accrued when he knew or should have known that

his property was lost or destroyed and was not going to be returned.

Although Harrison initially sought the return of his property, within a month of the search

Lt. Harrison informed him that his property had been seized for a federal investigation and that it

would be returned upon the completion of that investigation. At that point, Harrison reasonably

concluded that there was no basis to assert a claim and withdrew his ARP on July 25, 2017. Indeed,

8

in Harrison's administrative FTCA complaint submitted to the DEA on December 8, 2018, which was attached to the Complaint, Harrison stated that he "was informed that there was an investigation and that I would be getting [the property] back once they inspected it," but that his property "was never RETURNED to me and now I'm being told my property is lost." Compl. at 13.

The investigation and prosecution to which the search was related did not end until October 23, 2018. Prior to that point, Harrison did not have reason to inquire further whether his property would be returned. Although he did, in fact, make such inquiries through his attorneys before that date, the earliest record of his attorneys being told that the property may have been lost is a July 24, 2018 email stating that a state official "suspect[ed]" that Harrison's legal file "has been tossed." Opp'n Exhibits at 9, ECF No. 26-2. Where Harrison's claim would be time-barred only if his claim accrued by August 6, 2017, three years before the filing of the Complaint, and the present record reflects that it accrued on or about July 24, 2018, the Court will deny the Motion as to the statute of limitations argument.

## B. Exhaustion of Administrative Remedies

Defendants also assert the affirmative defense that Harrison has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide relief to aggrieved inmates," (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use," or (3) prison administrators actively "thwart" inmates from filing grievances. *Ross*, 578 U.S. at 643–44.

In Maryland prisons, for the type of grievance asserted by Harrison, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2022). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2017); Md. Code Regs.

§ 12.07.01.05(B).   Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, Defendants focus on the fact that although Harrison filed an ARP two days after the seizure of his property, he withdrew it on July 25, 2017 after he was told that his property would be returned after the relevant investigation was completed.  Defendants also provide a record of all ARPs filed at MCIJ for the 30 days following the seizure of Harrison's property, ostensibly to demonstrate that he did not file any other ARPs within the required time period.  However, as discussed above, Harrison's claim is not that this property was unlawfully seized, but that it was lost and not returned to him.  Once the case associated with the investigation was completed on October 23, 2018 and Harrison was formally told that his property was lost and would not be returned, he filed a second ARP four days later, on October 27, 2018.  In that ARP, Harrison specifically stated that Lt. Harrison had told him the property would be returned, but he had just been informed at the October 23, 2018 hearing that his property was lost and would not be returned. The Warden of MCIJ denied this ARP on November 20, 2018 because he deemed the dispute to be with DEA, not DPSCS.  According to Harrison's Petition for Judicial Review, Harrison appealed the denial to both the Commissioner of Correction and the IGO, and Defendants do not claim otherwise.  Accordingly, the record supports the conclusion that Harrison exhausted administrative remedies by way of the second ARP.  The Court will therefore deny the Motion on the issue of exhaustion of administrative remedies.

## C.   Supervisor Defendants

Defendants next argue that any § 1983 claims against the Supervisor Defendants must be dismissed because Harrison has neither alleged any personal action by the Secretary of DSPCS, the Warden of MCIJ, Commissioner Wayne Hill, and IGO Deputy Director Robin Woolford nor

11

asserted facts sufficient to support a finding of supervisory liability against any of the Supervisor Defendants.

Generally, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation because the doctrine of *respondeat superior*, or vicarious liability, does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisor who has not directly participated in a constitutional violation may be subject to supervisory liability under § 1983 if : (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Harrison does not allege that Secretary of DSPCS, the Warden of MCIJ, Commissioner Hill, and IGO Deputy Director Robin Woolford were personally involved in the loss of his personal property or the failure to return it, and he has not made the requisite showing to establish supervisory liability. The Court will therefore grant the Motion as to any § 1983 claims against the Supervisor Defendants and dismiss those claims.

**D.     Due Process**

Defendants further argue that upon consideration of the merits, the Court should grant summary judgment in their favor on the § 1983 claims. On the claim that the loss of Harrison's property violated his due process rights, Defendants primary argument is that the DEA returned all of Harrison's property, so there is no viable claim for a deprivation of property rights. In December 2020, the DEA returned property consisting of five compact discs containing legal

12

materials, more than 150 photos, two phone books, one folder of letters, 18 envelopes, and approximately 20 copies of pictures. Defendants have a provided a receipt signed by Harrison acknowledging the return of these items. Harrison, however, maintains that other property on his lengthy list of seized items was not returned, and Defendants do not provide evidence that definitively refutes his claim that other property remains lost or unreturned. At a minimum, there is a genuine issue of material fact on whether all of the property was returned, so the Court will not grant summary judgment to Defendants on this basis.

Nevertheless, the Court finds that Harrison has failed to state a valid due process claim based on the loss of his personal property. The Supreme Court has held that either an intentional or negligent deprivation of property by a prison official does not implicate the Due Process Clause if there is a meaningful post-deprivation remedy available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Generally, the right to seek damages and injunctive relief in Maryland courts in a tort action constitutes an adequate post-deprivation remedy for inmates in Maryland prisons. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) ("[T]here is no question that the relief available to plaintiff in state court is adequate."). Specifically, for a claim of lost property, judges in this District have held that the Maryland Tort Claims Act provides an adequate post-deprivation remedy. *See Hawes v. Foxwell*, No. DKC-17-2598, 2018 WL 2389060, at *4 (D. Md. May 25, 2018) (finding that the MTCA and the IGO provided adequate post-deprivation remedies for an inmate who had personal items and legal documents lost after a search of his cell); *Fuller v. Warden*, No. WMN-12-43, 2012 WL 831936, at *2 (D. Md. Mar. 8, 2012) (finding that the MTCA provide an adequate post-deprivation remedy to a prisoner who alleged that his personal property in his cell, including legal materials, were improperly confiscated or lost when he was moved to segregation); *Resper v. Schurg*, No. PJM-13-1278, 2014 WL 3345131, at *2 & n.2 (D. Md. July 7, 2014) (finding that the MTCA and IGO provided adequate post-deprivation remedies for an

inmate who alleged that correctional personnel improperly withdrew funds from his prison account).  Maryland state inmates may sue correctional officers and other prison officials in tort actions in Maryland courts, subject to the requirements and restrictions of the MTCA.  *See, e.g.*, *Cooper v. Rodriguez*, 118 A.3d 829, 860 (Md. 2015) (holding that a prison official could be liable under the MTCA for acts involving gross negligence).  Thus, any claim that Harrison's personal property was taken or destroyed by correctional officers does not state a constitutional claim for relief.

Finally, in his brief in opposition to the Motion, Harrison alleges violations of a Maryland state regulation and a DPSCS policy by failing to inventory the property and issue a "confiscation sheet" listing the property.  Opp'n Mot. Summ. J. at 6-7, ECF No. 26-1.  Because a plaintiff may not amend the complaint through a brief responding to a motion, the Court need not consider this argument.  *See Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Laboratories, Inc. v. Akzo, N. V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993).  Even if it did, a violation of a prison policy, procedures, or regulations does not in and of itself provide a basis for a due process claim.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015 (citing *Myers*).  Thus, Harrison's due process claim fails.

### E.    Access to Courts

Although Harrison does not directly assert a claim of a denial of access to the courts, in the FTCA administrative claim form attached to his Complaint, Harrison alleges the loss of his legal papers "delayed an[d] hindered the proceedings of my post-conviction hearing," and that his "right

14

to due process has been stricken as a result of this." Compl. at 13. Construed liberally, the Complaint arguably alleges an access-to-courts claim arising from the loss of his legal materials.

Prisoners have a "right of access to the courts" under the First Amendment to the Constitution. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). "[A] prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" or "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Id.* at 352-53 & n.3. The complaint must contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The complaint must contain specific allegations of the injury arising from the denial of access to the courts and articulate specifically how the litigation was harmed, such as that the claim was lost or rejected. *See Ali v. District of Columbia*, 278 F.3d 1, 8 (D.C. Cir. 2002) (holding that an allegation that the failure to transport a prisoner's legal documents to his prison caused an unspecified "open case" to be "set back" did not state a claim of actual injury from a denial of access to courts); *Cody v. Weber*, 256 F.3d 764, 769-70 (8th Cir. 2001) (holding that lack of access to computer disks containing the prisoner's legal materials did not establish a denial of access to courts because the vague allegation that the stored data would "set him free" was insufficient to establish actual injury). Generally, allegations of delay in legal proceedings that do not result in "actual substantial prejudice to specific litigation" are insufficient to state a claim for denial of access to courts. *See Johnson v. Barczak*, 338 F.3d 771, 773 (7th Cir. 2003).

15

Here, Harrison has identified a specific legal proceeding impacted by the loss of his property, specifically, his post-conviction proceeding. In addition, he has provided a long list of specific, missing legal documents, including his post-conviction petition and amendments, commitment records, homicide file, prosecution file, new trial motions, appeal motions, appeal opinions, appellate briefs, sentencing transcripts, and motion for discovery. However, Harrison has not identified any "nonfrivolous" or "arguable" claim that he lost or was prevented from making as a result of the loss of his legal materials. *Christopher*, 536 U.S. at 415. Harrison's non-specific allegations that his post-conviction proceedings were "delayed an[d] hindered" is not enough to establish an access to courts claim under the First Amendment. Compl. at 13; *see, e.g.*, *Johnson*, 338 F.3d at 773. Accordingly, Defendants are entitled to summary judgment on this claim.

## IV.    Maryland Tort Claims Act

Where Harrison has alleged tort claims against Defendants in the Complaint, and the remaining Defendants are state officials rather than federal officials, the Court construes the Complaint to include tort claims against these state officials under the MTCA. However, because all federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over these state law claims and will dismiss them under 28 U.S.C. § 1367(c)(3). Although the Court takes no position on whether Harrison can assert a viable MTCA claim or whether he can satisfy any procedural requirements, the Court notes that any period of limitations for these claims was tolled from the filing of the Complaint in this case until 30 days after the date of the Order dismissing this case. 28 U.S.C. § 1367(d).

## V.    Unserved Defendants

Defendants P. Casper and Cpl. Luna have not been served. However, for the same reasons that all claims against the other Defendants will be dismissed, Harrison has not stated a plausible claim for relief against these Defendants. Therefore, the claims against Defendants P. Casper and Cpl. Luna will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915A and 1915(e).

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED. Harrison's Motion for Discovery will be DENIED. A separate Order shall issue.

Date:  September 1, 2022

THEODORE D. CHUANG
United States District Judge

17